UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RAP INDY, LLC, <br> MSI LYNHURST INDIANAPOLIS <br> GROCERY, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> ZURICH AMERICAN INSURANCE <br> COMPANY, <br> THE TRAVELERS INDEMNITY <br> COMPANY, <br><br> Defendants. | No. 1:19-cv-04657-JRS-MJD |

**Order on Motion to Reconsider & Motions in Limine**

Plaintiffs RAP Indy, LLC ("RAP Indy") and MSI Lynhurst Indianapolis Grocery, LLC ("MSI Lynhurst") filed insurance claims with Defendants Zurich American Insurance Company ("Zurich") and The Travelers Indemnity Company ("Travelers"). Plaintiffs and Travelers have since settled. (ECF No. 178.) Plaintiffs move the Court to reconsider part of its summary-judgment order with respect to the bad-faith claim against Zurich. (*See* ECF No. 172). Plaintiffs and Zurich also each move in limine to exclude the testimony of one another's expert witnesses. (*See* ECF Nos. 164, 165.) Because the outcome of the motion to reconsider affects the outcomes of the other motions, the Court considers the pending motions at once.

**I. Motion to Reconsider**

First, Plaintiffs move for reconsideration of part of the Court's order on summary judgment. (*See* ECF No. 172.)

1

"Motions to reconsider serve a limited function, to be used where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Davis v. Carmel Clay Sch.*, 286 F.R.D. 411, 412 (S.D. Ind. 2012) (citing *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)) (internal quotation marks omitted). A motion to reconsider "is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) (citations omitted).

In relevant part, the Court determined that Plaintiffs' expert-witness reports were untimely disclosed and hence inadmissible for purposes of the motions for summary judgment. (*See* Order 21–22, ECF No. 167.) Accordingly, the Court found that Plaintiffs had not come forward with evidence establishing a genuine issue of material fact to sustain their claim for breach of the implied covenant of good faith and fair dealing, so it granted summary judgment for Zurich on the bad-faith claim. (*See id.* at 23.) Plaintiffs now contend that the Court erred because their expert disclosures were not untimely for summary-judgment purposes.

Paragraph III.G of the scheduling order states,

> Notwithstanding the provisions of paragraph (F), above, if a party intends to use expert testimony in connection with a motion for summary judgment *to be filed by that party*, such expert disclosures must be served on opposing counsel no later than 90 days prior to the dispositive motion deadline.

(ECF 28 at 4 (emphasis added).) Seizing on the emphasized phrase, "to be filed by

2

that party," Plaintiffs read this paragraph to require expert testimony disclosure ninety days before the dispositive motion deadline *only if* such testimony was to be used offensively as part of a motion for summary judgment by the party proffering the testimony. *Plaintiffs* did not move for summary judgment on their bad-faith claims; they only raised the expert affidavits to defend against *Defendants'* motions for summary judgment on the bad-faith claims. Relying on Defendants' arguments of untimely disclosure of expert witnesses, the Court did not focus on the phrase "to be filed by that party" as it should have when it found Plaintiffs' disclosures untimely.

Zurich rightly notes that Plaintiffs should have filed a surreply contesting the evidentiary objections first raised in Defendants' response briefs. *See* S.D. Ind. L.R. 56–1(d) (litigant may file surreply as matter of right if evidentiary objections are raised for the first time in reply). Nevertheless, it would be somewhat unfair to find Plaintiffs' timeliness counterargument waived or forfeited when Defendants' initial argument was built on an erroneous reading of the scheduling order. Zurich is also correct that Plaintiffs at least sporadically cited to the expert affidavits to establish facts on its breach-of-contract claims, which Plaintiffs *did* move for summary judgment on—those citations certainly cut against Plaintiffs' argument that the expert testimony was only to be used defensively and therefore did not need to be disclosed by October 24, 2020. But the Court notes that it did not rely on any part of Plaintiffs' expert affidavits in ruling on the breach-of-contract claims.

Ultimately, the Court clearly erred by misreading Paragraph III.G of the scheduling order, so it will grant reconsideration in part and undertake a de novo

analysis of the bad-faith claim. The expert affidavits were timely disclosed, and the Court should have considered them. Doing so now, the Court must decide a previously unreached question: whether the affidavits contain admissible expert testimony.

## II. Admissibility of Expert Testimony

Federal Rule of Evidence 702 states,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

"In short, the rule requires that the trial judge ensure that any and all expert testimony or evidence admitted 'is not only relevant, but reliable.'" *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 806 (7th Cir. 2013) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)). Reliability is "primarily a question of the validity of the methodology employed by an expert, not the quality of the data used in applying the methodology or the conclusions produced." *Id.* (holding that district court improperly assessed and discredited the "factual underpinnings" of expert's conclusions).

Additionally, as with any evidence, the Court must consider relevance. *See* Fed. R. Evid. 402. Specifically, the question here is whether the expert testimony would help the jury understand whether Zurich acted in bad faith. "Indiana law has long recognized that there is a legal duty implied in all insurance contracts that the

4

insurer deal in good faith with its insured." *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 518 (Ind. 1993). "Poor judgment or negligence do not amount to bad faith; the additional element of conscious wrongdoing must also be present." *Colley v. Ind. Farmers Mut. Ins. Grp.*, 691 N.E.2d 1259, 1261 (Ind. Ct. App. 1998) (citation omitted). Conscious wrongdoing may include a "dishonest purpose, moral obliquity, furtive design, or ill will." *Id.* The insurer's obligation of good faith and fair dealing at least includes

> the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim.

*Hickman*, 622 N.E.2d at 519. A refusal to pay is unfounded if the insurer "denies liability knowing that there is no rational, principled basis for doing so . . . ." *Id.* at 520. "To prove bad faith, the plaintiff must establish, with clear and convincing evidence, that the insurer had knowledge that there was no legitimate basis for denying liability." *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 40 (Ind. 2002) (citing *Ind. Ins. Co. v. Plummer Power Mower & Tool Rental, Inc.*, 590 N.E.2d 1085, 1093 (Ind. Ct. App. 1992)).

### A. Persuasive Authority

A review of how other courts have addressed challenges to expert testimony in the context of bad-faith denials of insurance claims reveals a few themes.

First, witnesses do not need to be employed as claims investigators in order to be insurance experts if they are otherwise qualified. *See Med. Protective Co. of Fort Wayne Ind. v. Am. Int'l Specialty Lines Ins. Co.*, No. 1:13-CV-357-HAB, 2020 WL

5

408462, at *2 (N.D. Ind. Jan. 24, 2020) (rejecting challenge to qualifications and finding that proffered expert did not "need [to] be employed as a claims handler at an insurance company to offer his opinions regarding MedPro's handling"). Cases aside, common sense prevails here. A law professor need not practice criminal law to have expertise on criminal law. A respected professional engineer need not have personal experience building blenders before opining on a blender's design defect. Cross-examination is the opposing party's avenue to attack an expert for having insufficient on-the-job experience, not a challenge to admissibility. *See, e.g.*, *Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1308 (7th Cir. 1987).

Second, the line between impermissible legal conclusion and permissible conclusion based on reliable methodology is important. Although testimony on the ultimate issue that an insurer acted in bad faith "is not objectionable just because it embraces an ultimate issue," Fed. R. Evid. 704, such testimony is inadmissible if it nevertheless will not "help the trier of fact to understand the evidence," Fed. R. Evid. 702(a).

Accordingly, a naked conclusion that "the insurer acted in bad faith" is unhelpful and thus inadmissible. *See Wilson v. Am. Fam. Mut. Auto. Ins. Co.*, 683 F. Supp. 2d 886, 890 (S.D. Ind. 2010) (finding conclusory expert's anticipated testimony that "American Family did not have a reasonable basis for reaching their claim conclusion, and defending their inappropriate evaluation requires a conscious effort to be unfair to [the insured]"); *Bartlett v. State Farm Mut. Auto. Ins.*, No. IP01-0510CHK, 2002 WL 31741473, at *3 (S.D. Ind. Nov. 27, 2002) (finding expert's affidavit containing

legal interpretation was "essentially a supplemental brief submitted in the guise of testimony"); *Mohler v. Standard Ins. Co.*, No. 1:05-CV-1162-RLY-WTL, 2007 WL 7648472, at *3 (S.D. Ind. Jan. 26, 2007) (rejecting expert testimony, noting "it is not the appropriate role of a[n] expert witness to review Mohler's insurance file and decide whether it evidences a bad faith denial by Standard of Mohler's claim. That is a role for the jury."); *Michel v. Am. Fam. Mut. Ins. Co.*, No. 2:08 CV 331, 2010 WL 3039506, at *6 (N.D. Ind. Aug. 2, 2010) (rejecting expert testimony where it did "not attempt to correlate industry standards with how the claim was handled here"); *Steadfast Ins. Co. v. Auto Mktg. Network, Inc.*, No. 97 C 5696, 2004 WL 783356, at *5 (N.D. Ill. Jan. 28, 2004) (expert testimony on whether insurer commenced insurance-fraud case in bad faith was unhelpful to factfinder because it contained only legal interpretation without reference to the industry's standard of care) (applying Illinois law).

In contrast, when an expert focuses closely on the standard of care in the insurance industry, industry custom, or industry practice, courts have permitted the testimony. *See Valley Forge Ins. Co. v. Hartford Iron & Metal, Inc.*, No. 1:14-CV-6, 2018 WL 4214524, at *9 (N.D. Ind. Sept. 5, 2018) (permitting expert testimony on "customs, practices, and standards in the insurance industry" but disallowing testimony on ultimate issue of bad faith); *Fed. Ins. Co. v. Arthur Andersen, LLP*, No. 1:03CV01174, 2006 WL 6555232, at *3 (N.D. Ill. Jan. 18, 2006) (finding expert testimony on "custom and practice of claims handling" relevant and helpful to the jury, but barring testimony on ultimate issue of bad faith).

### B. *Plaintiffs' Experts*

Plaintiffs retained two experts to discuss the issue of bad faith: William Warfel and Lou Fey. In a motion in limine, Zurich seeks to bar their testimony. (*See* ECF No. 164.)

To the extent Zurich challenges Warfel's and Fey's qualifications, the Court believes that such challenges would be adequately addressed in cross-examination rather than a motion in limine. *See Med. Protective Co.*, No. 1:13-CV-357-HAB, 2020 WL 408462, at *2. Given the academic, consulting, and managing experience between them, Warfel and Fey have enough "specialized knowledge" of insurance claims-handling to be experts under Federal Rule of Evidence 702.

Zurich's charge that Warfel's and Fey's opinions are not founded on their specialized knowledge and experience is more serious and requires further analysis.

1. <u>Warfel</u>

Warfel's opinion in major part factually summarizes the record and the content of Zurich's policy. Where Warfel's opinion does more than that, it merely rehashes ad infinitum Plaintiffs' legal arguments about the timing of the plumbing loss. (*See, e.g.*, ECF No. 164-1 at 15–16 (opining that it is "crystal clear" plumbing loss occurred simultaneously with electrical loss); *id*. at 20 (opining that Zurich breached the policy by refusing to find that the plumbing loss occurred within the policy period); *id*. (opining that there was "overwhelming evidence" that plumbing loss occurred within policy period); *id*. at 27 (opining that it was "totally and completely disingenuous" to deny coverage for the plumbing loss given the utility-company evidence that suggests

8

that the electrical loss occurred within the policy period).) But one does not need any specialized knowledge of insurance to understand those legal arguments.

To be sure, Warfel does mention the custom and practices of the insurance industry. But where he does so, he invokes less than earth-shattering principles. He opines that one custom or practice is "for claim representatives to exercise sound discretion," and that Zurich's refusal to accept Plaintiffs' equivocal evidence on timing was an abuse of discretion. (ECF No. 164-1 at 20.) The jury does not need an expert to tell them that an insurer should exercise sound discretion or what quantum of evidence is sufficient to prove the breach-of-contract claim. Warfel also opines that "the custom and practice in the industry is to resolve this ambiguity in favor of the insured," and that Zurich "failed to do so." (*Id*. at 22.) But this statement seems to refer to the legal principle inherent to all-risk insurance policies that ambiguous policy provisions will be construed in favor of the insured. *See Gallant Ins. Co. v. Amaizo Fed. Credit Union*, 726 N.E.2d 860, 864 (Ind. Ct. App. 2000). And the statement even seems to mischaracterize the rule; as the Court has noted before, this rule does not excuse insureds from proving that a loss occurred more likely than not within the policy period. (*See* Order 4, ECF No. 167.) Warfel also opines that Zurich failed to meet a "custom and practice" to "first address the interest of the policyholder" before addressing the insurer's financial interests. (ECF No. 164-1 at 25.) That proposition seems like a roundabout way of saying, "An insurer should pay the insured what it is owed." Again, that is not a complicated principle a jury must hear about from an expert witness.

9

As a whole, Warfel's opinion reads like "a supplemental brief." *Bartlett*, 2002 WL 31741473, at *3. In the context of the motions for summary judgment, the Court had no trouble comprehending Plaintiffs' arguments about the timing of the plumbing loss, without the aid of Warfel's opinion. Warfel's opinion likewise would not help a jury determine whether Zurich acted in bad faith. Using buzzwords like "custom and practice of the industry" cannot save Warfel's opinion from consisting of legal conclusions and otherwise unhelpful testimony. Warfel's testimony therefore must be struck.

2. Fey

Fey's opinion suffers from similar infirmities. The bulk of Fey's opinion collects and regurgitates deposition testimony and emails that can be read in a way to support Plaintiffs' claim of bad faith.

Like Warfel, Fey repeatedly opines that Zurich should not have denied coverage for plumbing because, Fey speculates, the plumbing and electrical thefts occurred in one uninterrupted professional job. (*See, e.g.*, Fey Report ¶¶ 39–42, 47, 48, 50, 56, 57, ECF No. 164-2.) To reach that conclusion, Fey does no more than sift through evidence that the jury will hear anyway. Fey also reaches other conclusions simply by citing facts in the record, as a legal brief would do. (*E.g.*, *id.* ¶ 52 (opining that Zurich failed to properly investigate the roof, water, and mold damage because it did not remove the stone ballast from the roof).)

Also like Warfel, Fey invokes customs and practices of the insurance industry. For instance, he says that a claim representative must pay covered claims "promptly

10

and fairly"; "negotiate in a forthright, honest, and flexible manner over any amounts that are in dispute"; and otherwise conduct a full and objective investigation into whether coverage exists for a given claim. (Fey Report ¶¶ 16, 43, 61, ECF No. 164-2.) These "industry standards" are so banal that they appear to flow directly from the average Joe's understanding of what it means for a contractual party to deal in good faith. Once it hears all the facts, a jury does not need Fey's help to determine whether Zurich acted in bad faith. Thus, Fey's testimony must be struck.

C. *Zurich's Expert*

That leaves Plaintiffs' motion in limine to exclude the testimony of Zurich's expert witness, Dale Frediani. (*See* ECF No. 165.) Plaintiffs do not question his qualifications, so the issue narrows to whether Frediani used a reliable methodology and stated an opinion containing more than mere legal conclusions.

Unfortunately, Frediani's opinion has the same faults as Warfel's and Fey's. The portion of the opinion addressing Indiana caselaw is obviously impermissible, (ECF No. 166-1 at 4–5); the Court is the expert on the law, not Frediani. The portion on whether Plaintiffs breached their duties in the event of loss, (*id.* at 6–7), is (1) contract interpretation—i.e., an exercise in legal reasoning—and (2) legal argument that Zurich's lawyers could have raised (but did not) in their summary-judgment briefs. Moreover, Frediani's conclusions are not discernibly the product of applying specialized knowledge. Instead, the conclusions are rather conclusory. He opines that there is "no evidence of reckless conduct on the part of Zurich's adjusters, examiners, management and expert." (*Id.* at 10.) He goes on to opine that Zurich

11

conducted a full and fair investigation and "met and exceeded industry custom and practice." (*Id.*)

As with the other proffered expert opinions, the Court does not see how a jury could benefit from Frediani's recital of the record and his conclusory opinions that the record does not contain evidence of bad faith. A jury could do that by itself. This is certainly a case with a large record. But our system trusts juries, armed with jury instructions, to resolve even complicated, fact-intensive disputes. If Zurich wants an opportunity to synthesize evidence, it can do so in its closing argument. An expert witness is not that opportunity. Frediani's testimony must be struck.

### III.   Conclusion

In sum, the expert opinions offered by both sides are inadmissible because they would not assist a jury. *Accord Wilson*, 683 F. Supp. 2d at 890; *Bartlett*, 2002 WL 31741473, at *3; *Mohler*, 2007 WL 7648472, at *3. The experts' invocations of the "customs and practices" of the insurance industry do not save their opinions; these "customs and practices" appear to parrot what the jury will already know from jury instructions framed around the four basic permutations of the covenant of good faith and fair dealing in Indiana caselaw. *See Hickman*, 622 N.E.2d at 519. Hence, the motions in limine, (ECF Nos. 164, 165), are both **granted**, and the Warfel, Fey, and Frediani opinions may not be presented at trial.

The Court now returns to the issue of whether Plaintiffs have raised a genuine issue of material fact to avert summary judgment on their claim against Zurich for breach of the covenant of good faith and fair dealing. Although the Court rules that

Plaintiffs' expert opinions are inadmissible as evidence, the Court believes that, in the interest of justice, it should at least treat these expert reports like the supplemental briefs they approximate. Accordingly, the Court ignores the conclusions in the Fey and Warfel opinions but considers the underlying facts cited therein. Plaintiffs' theory is that the plumbing and electrical losses must have occurred simultaneously on January 29, 2018, when the meter was cut, (Pourteymour Aff. ¶ 8, ECF No. 118-5 (historical utility data).) For purposes of the bad-faith claim, a jury will need to test whether Zurich had an objectively reasonable basis for rejecting that theory. However, a bad-faith claim also includes a "subjective" component on the part of the insurer. *See Thorne v. Member Select Ins. Co.*, 899 F. Supp. 2d 820, 826–27 (N.D. Ind. 2012) (subjective component is insurer's "knowledge of the lack of a reasonable basis to deny a claim"). Does the record contain evidence of that subjective component? The Court thinks so, after considering the facts pointed out in the Fey report. McGriff Insurance Services agent Jeff Johnson had "a difficult time seeing how Zurich c[ould] take the position" that the plumbing loss did not happen during the Zurich policy period. (Johnson Dep. Tr. 60:5–62:8.)[1] Johnson says that Zurich's adjuster Michael Swanson even indicated at some point during a conversation with Johnson that "the electrical and plumbing damage were similar, which would lead . . . to the assumption that they would have occurred at roughly the same time period."[2] (*Id.* at 43:10–44:5.) If that is true, then Swanson seemingly

---

[1] The Court cannot supply an ECF number because the Court cannot locate the Johnson deposition transcript on the docket; it appears to have never been attached to any filing.
[2] Swanson's purported statements to Johnson are not hearsay because they are statements of a party opponent's agent. *See* Fed. R. Evid. 801(d)(2)(D).

13

reversed his position on when the plumbing damage occurred, seemingly without receiving any new, affirmative evidence to explain why he changed his mind. A jury could rationally conclude that Swanson's unexplained reversal of his position on the plumbing loss constituted "an unfounded refusal to pay policy proceeds," *Hickman*, 622 N.E.2d at 519. Swanson seems to deny that he *ever* considered there to be sufficient evidence that the plumbing loss occurred within Zurich's policy period. (*Cf.* Swanson Aff. ¶ 10, ECF No. 124-5.) But Swanson's subjective intent is a continuing issue of fact for a jury to resolve. Thus, the motion to reconsider, (ECF No. 172), is **granted**, and Plaintiffs' claim against Zurich for breach of the covenant of good faith and fair dealing is revived.

The Magistrate Judge is invited to meet with the remaining parties to discuss resolution short of trial.

**SO ORDERED**.

Date: 8/4/2021

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution to registered parties of record via CM/ECF.